[Cite as *State v. Core*, 2018-Ohio-312.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27512 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-3508 |
| | : | |
| DARRYL CORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 26th day of January, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Darryl Core appeals from his conviction and sentence on one count of promoting prostitution, a fourth-degree felony.

{¶ 2} In two related assignments of error, Core challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. The record reflects that a jury convicted Core of violating R.C. 2907.22(A)(2), which provides that no person shall knowingly "supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire."

{¶ 3} At trial, Detective Matt Overholt testified that he was conducting an undercover prostitution sting out of a rented apartment on November 10, 2016. (Trial Tr. at 23-24). On that occasion, he responded to an advertisement on an internet page where prostitutes offered to perform sex acts for money. (*Id.* at 25-26). In the ad, a prostitute named "Ashley" identified specific sex acts she would perform and included the price for each act. The ad also contained pictures of Ashley. (*Id.* at 27-28). Overholt exchanged a series of text messages with Ashley and agreed to pay her $200 for an hour of her time during which she would engage in sexual intercourse with him at his apartment. (*Id.* at 28-39). Ashley arrived at the appointed time and entered the apartment. (*Id.* at 40-41). After some preliminary conversation, Overholt and Ashley discussed the specific sex acts she would perform and money was exchanged. (*Id.* at 44-46). At that point, other officers in the apartment came out of hiding and arrested Ashley. (*Id.* at 46-47).

{¶ 4} The next witness for the prosecution was Ashley. She testified that she was homeless and at a bus stop when Core and his girlfriend pulled their car up to a stop light. Core offered Ashley a ride, and she accepted. Ashley testified that she was addicted to

drugs at the time. On the way to her destination, she got Core's phone number so she could "get in contact with him if [she] wanted to get drugs." (*Id.*). A couple of days later, Ashley called Core and asked him to pick her up in Fairborn. (*Id.* at 61). Core and his girlfriend picked her up in his girlfriend's car and took her to his girlfriend's house, where Core also resided. Core gave Ashley drugs and asked how she got money. She replied that she "was panhandling" and had "done dates" in the past before becoming homeless. (*Id.* at 62). Core responded by offering Ashley his phone and use of his girlfriend's house so she could place internet ads and make money prostituting herself again. (*Id.* at 63, 90). In exchange, Core proposed that Ashley give him half of the money she earned. (*Id.* at 90, 93). Ashley agreed and posted the ad to which Detective Overholt responded. Ashley examined the ad at trial and confirmed that she had offered to perform sex acts for money. (*Id.* at 64-65). She also confirmed her use of Core's phone to post the ad. (*Id.* at 65-67).

{¶ 5} Ashley testified that when people responded to the ad, Core sometimes texted them back instead of her doing it. (*Id.*). Other times, she would use his phone and text them herself. (*Id.*). Prior to her encounter with Overholt, Ashley met two other men through her ad. She had sex with one of the men at a motel in exchange for money. On that occasion, Core's girlfriend drove Ashley to the motel with Core also in the car. Core and his girlfriend waited outside the motel until Ashley was finished. They then drove her back to Core's girlfriend's house. Ashley gave Core half of the money she earned in exchange for use of his phone, a place to stay, and food to eat. (*Id.* at 68-70). Ashley testified that it was Core's idea to split the money equally. (*Id.* at 70). Ashley did not engage in sexual activity with the second man who responded to her ad. That person was a "prior customer" of Ashley's. She met him in his car and "told him some story" about

needing money. He then gave her $200 as a gift. (*Id.* at 71-72).

{¶ 6} Regarding her encounter with Overholt, Ashley testified that Core sent some of the text messages to the detective that purported to be from her. (*Id.* at 73, 83, 103-104). Core also took a picture of her and sent it to Overholt. (*Id.*) As for the nature of her relationship with Core, Ashley testified that she felt like "he was in charge" because "he was providing the phone and the house for [her] to stay at, [and] the food that [she] was eating." (*Id.* at 80). She felt like she could not say no to prostituting "if [she] wanted a roof over [her] head, and food in [her] stomach[.]" (*Id.*).

{¶ 7} The final witness was Detective Andrew McCoy. He testified that he monitored the parking lot outside the apartment where Detective Overholt met Ashley. (*Id.* at 123). He watched Ashley exit a car and enter the apartment. He then observed Core and his girlfriend waiting for Ashley in the girlfriend's car. (*Id.* at 125-126). After Ashley's arrest, McCoy approached the car and obtained Core's cell phone, which had been used to create the internet ad. (Id. at 127-128).

{¶ 8} Based on the evidence presented, the jury found Core guilty of promoting prostitution. The trial court imposed an eighteen-month prison sentence and designated him a Tier I sex offender. (Doc. #49). This appeal followed.

{¶ 9} In his two assignments of error, which are briefed and argued together, Core challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. Specifically, he contends the State failed to prove that he supervised, managed, or controlled the activities of a prostitute. Core notes that his girlfriend actually drove her own car when they transported Ashley for "dates." The house that Core and his girlfriend provided for Ashley to use also was owned by Core's girlfriend. Core notes too

that he did not dictate the content of Ashley's internet ad. Nor did he take part in setting the fees for her services or determine which sex acts she was willing to perform. Ashley also had discretion to decide when to go on "dates." Although Ashley gave Core money from her prostitution, Core insists that it was only for "living expenses." For the foregoing reasons, Core contends the evidence fails to support his conviction for promoting prostitution.

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 11} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be

reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Core's conviction is supported by legally sufficient evidence and is not against the weight of the evidence. Core was convicted of violating R.C. 2907.22(A)(2) for knowingly supervising, managing, or controlling the activities of a prostitute in engaging in sexual activity for hire. As set forth above, the record reflects that Core allowed Ashley to reside with him and his girlfriend in exchange for half of the money she earned through prostitution. He also let her use his cell phone to post her internet ad, took a picture of her, exchanged text messages with potential clients on Ashley's behalf, and at least twice accompanied her to appointments where he waited outside in the car for her. This evidence, if believed, is legally sufficient to support a finding that Core supervised or managed Ashley's sexual activity for hire. After reviewing the evidence, we also cannot say the jury clearly lost its way and created a manifest miscarriage of justice in convicting him. The present case is not one in which the evidence weighs heavily against Core's conviction.

{¶ 13} Core's two assignments of error are overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Sarah E. Hutnik
Mark A. Fisher

Hon. Barbara P. Gorman